■ GIANFRANCO DONATI, Respondent, v MARINELLI CONSTRUCTION CORP. et al., Appellants. [800 NYS2d 571]—

In a consolidated action, inter alia, for an accounting, the defendants appeal, as limited by their brief, from so much of a judgment of the Supreme Court, Queens County (Leviss, J.H.O.), dated November 26, 2003, as, after a nonjury trial, in effect, is in favor of the plaintiff and against them dismissing the counterclaim for an accounting with respect to certain real property.

Ordered that the judgment is reversed insofar as appealed from, on the law, the counterclaim for an accounting with respect to the subject real property is reinstated and is severed, and the matter is remitted to the Supreme Court, Queens County, for a new trial on that counterclaim, with costs to abide the event.

The actions underlying this consolidated action were originally commenced to determine the rights of the parties, as joint venturers, with respect to various real estate development projects in Queens County. Following a prior decision and order of this Court resolving most of the parties' contentions (see Donati v Marinelli Constr. Corp., 247 AD2d 423 [1998]), the Supreme Court, in an amended judgment entered August 5, 1999, inter alia, directed the plaintiff to account for a leasehold interest jointly held by the parties in a certain parking lot located in Whitestone. The relevant period of time for the accounting was July 9, 1987, through December 2, 2002, the date of trial, during which time the plaintiff operated the parking lot, collecting all proceeds and paying all required expenses. The Supreme Court, after a nonjury trial, and after imposing a sanction against the plaintiff in the sum of $3,137.26, determined, inter alia, that the parties owed each other nothing with respect to the 15-year operation of the parking lot and, in effect, dismissed the defendants' counterclaim for an accounting with respect to the parking lot.

The plaintiff, as the party submitting the account, has the burden of proving that he fully accounted for his operation of the parking lot over the 15-year period, "and this evidentiary burden does not change in the event the account is contested" (Matter of Schnare, 191 AD2d 859, 860 [1993]). While the defendants, as objecting parties, bear the burden of "coming forward with evidence to establish that the account is inaccurate or incomplete, upon satisfaction of that showing the accounting party must prove, by a fair preponderance of the evidence, that his or her account is accurate and complete" (id. at 860).

Applying those principles, we find that the Supreme Court erred in determining that the plaintiff satisfied his burden of presenting an accurate and complete account of his operation of the parking lot.

The defendants first requested an accounting with respect to the parking lot in December 1989 and reiterated their request in 1991, when the original underlying actions were commenced. It is undisputed, however, that the plaintiff did not begin sending the defendants periodic statements of the income earned and expenses incurred for the parking lot until 1996.

At trial, the plaintiff testified that he did not operate the parking lot for profit, but was merely trying to cover his expenses. In support of his contention, he produced two spreadsheets, both compiled by him based on bank statements, cancelled checks, and his personal records, which indicated that the parking lot incurred a net loss of $6,274.53 over the relevant period of time.

The record, however, does not contain sufficient information from which the accuracy and completeness of the plaintiff's compilation can be determined. For instance, on May 26, 1995, while the original underlying actions were pending, the plaintiff, apparently at the court's request, opened an escrow account at Citibank for the purpose of depositing money relating to the parking lot. The plaintiff, however, did not deposit all of the rental income from the parking lot into that account. Moreover, the Citibank records reflect that the account was used for other purposes as well, as evidenced by various deposits and withdrawals apparently unrelated to the parking lot. The defendants' accounting expert calculated the total deposits into the Citibank account at $172,396 for the period beginning May 26, 1995, and the total withdrawals at $165,000 for the same period. In contrast, the total income from the parking lot, as calculated by the plaintiff for the same period, was only $78,604. The defendants' expert had no way of isolating or identifying which specific Citibank transactions related to the parking lot, because the bank records did not identify the purpose of particular deposits and withdrawals.

Between 1995 and 1998, the plaintiff also deposited an unspecified part of the rental income into a personal bank account at Astoria Federal Savings, which he held jointly with his wife. While the plaintiff provided copies of bank statements showing deposits into, and withdrawals from, that account, as well as hundreds of cancelled checks, there was no way of isolating or identifying the transactions, if any, related specifically to the parking lot.

The plaintiff also testified that he received certain rental payments in cash, which were sometimes, though not always, deposited in one of the above-noted bank accounts.

The plaintiff produced no bank records whatsoever with respect to rental income received from July 1987 through May 1995. The only evidence he produced for that time period was a spreadsheet which he had prepared, as well as copies of certain cancelled checks. While the checks adequately documented various expenses incurred by the plaintiff in connection with the parking lot, they revealed nothing about the income earned from the lot during that period.

The only evidence tendered by the plaintiff with respect to rental income—other than the numbers appearing on his own spreadsheets—was a copy of a one-year rental agreement entered into with one of the parking lot tenants, for a total rent of $6,600, and copies of invoices totaling $15,600 sent to two tenants.

On this record, we find that the plaintiff properly accounted for the expenses he incurred in connection with the parking lot, but failed to account for private use and for rental income generated by the lot from July 9, 1987, through December 2, 2002.

Under the unusual circumstances of this case, given the plaintiff's failure to account for the income he claims to have received, the Supreme Court should have permitted the defendants to present expert evidence to estimate the fair value of the plaintiff's private use of the parking lot as well as the income generated by the parking lot during the period in question, taking into account its location, condition, and other relevant factors. Therefore, we remit the matter to the Supreme Court, Queens County, for a new trial on the counterclaim for an accounting.

The parties' remaining contentions are either without merit or academic in light of our determination. H. Miller, J.P., Krausman, Crane and Fisher, JJ., concur.